UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MUHAMMED OZBALIK,

Petitioner,

v.

CHRISTOPHER LAROSE, warden of Otay Mesa Detention Center PATRICK DIVVER, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); TODD LYONS, Acting Director of Immigration Customs Enforcement ("ICE"); MARKWAYNE MULLIN, Secretary of the Department of Homeland Security ("DHS"); and OTAY MESA DETENTION CENTER,

Respondents.

Case No.: 26-cv-4239-JES-SBC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

Before the Court is Petitioner Muhammed Ozbalik's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed on July 24, 2026. ECF No. 1 ("Pet."). Pursuant to the Court's Order to Show Cause (ECF No. 2), Respondents filed a return to the petition and Petitioner filed a traverse. ECF Nos. 6 ("Return"), 5 ("Traverse"). For the reasons set forth below, the Court **GRANTS** the Petition.

## I. BACKGROUND

Petitioner is a citizen of Turkey who fled to the United States due to persecution in his home country. Pet. ¶ 1. He entered the United States on February 9, 2023, and presented himself to authorities. *Id.* ¶ 2. Petitioner was detained for one day, and then was granted conditional parole through release on his own recognizance. *Id.* Respondents initiated removal proceedings during Petitioner's release on February 28, 2023. *Id.*

Since his parole, Petitioner alleges that he has built a life in this country. *Id.* ¶ 3. He found a place to live and integrated into his community. *Id.* He worked during this time, supporting himself financially. *Id.*

On November 1, 2025, Petitioner was detained after mistakenly driving into a military area due to a traffic re-route on his way home from work. *Id.* ¶ 4. He was taken for processing and transferred to Otay Mesa Detention Center, where he is currently being held. *Id.* Petitioner alleges that he was never presented with a warrant for this arrest, that the circumstances underlying his parole did not change, and that he did not receive any opportunity to be heard on his re-detainment. *Id.* ¶ 5.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview

of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

Petitioner argues that the manner in which he was redetained violates the Due Process Clause. Pet. ¶¶ 69-73. Respondent does not dispute this claim directly, but argues that Petitioner may not raise this claim here under the "abuse of the writ" doctrine because he failed to raise it in prior petitions. Return at 3-6. Petitioner argues that the abuse of the writ doctrine does not apply here because the failure to raise in the prior petition was excusable and the miscarriage of justice exception applies. The Court agrees with Petitioner.

### A. Abuse of the Writ

Respondents claim that Petitioner is barred from bringing a due process challenge based on Petitioner's prior parole for the first time here under the doctrine of abuse of the writ. Return at 3-6. The Ninth Circuit has explained the common law abuse of the writ doctrine as follows:

> The doctrine of abuse of the writ generally forbids the reconsideration of claims that were or could have been raised in a prior habeas petition. Under the abuse of the writ doctrine, a successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show (1) cause for bringing a successive petition and that prejudice would result or (2) that a fundamental miscarriage of justice would result from failure to entertain the claim.

*Alaimalo v. United States*, 645 F.3d 1042, 1049 (9th Cir. 2011) (internal quotations and citations omitted). The abuse of the writ doctrine serves to prevent a petitioner from deliberately withholding grounds for relief, protect courts from "needless piecemeal litigation," and prevent successive petitions "whose only purpose is to vex, harass, or delay." *Sanders v. United States*, 373 U.S. 1, 18 (1963).

Here, Petitioner raises his prior parole for the first time in a subsequent Petition. See Pet. ¶ 36. In Petitioner's prior adjudicated petition, this Court granted Petitioner a bond

hearing, which the government there conceded was due based on Petitioner's membership in the *Madonado-Bautista* class. *Ozbalik v. LaRose*, No. 25-CV-3656-JES-SBC, 2026 WL 125614, at *1 (S.D. Cal. Jan. 16, 2026). The briefing in the prior petition, filed on December 18, 2025, did not mention that the government previously granted Petitioner parole or otherwise properly raise a due process claim for release. *See id.*

Petitioner argues that he has cause for raising this new ground now because (1) his counsel was ineffective in failing to bring this claim before, and (2) the law was rapidly evolving when the first petition was filed. Traverse at 3-4. The Court agrees. It is no secret that the number of habeas petitions in this District has risen rapidly in the past ten months, and that the law on such petitions was significantly less clear in December of 2025 than it is today. As Petitioner points out, his prior counsel had no expertise at the time of filing of his first petition, which resulted in counsel failing to raise a claim that would have resulted in Petitioner's release some eight months ago. *Id.* at 6. Considering that context, the Court finds Petitioner's prior failure to raise this claim to be excusable.

Further, the Court finds that a miscarriage of justice would occur if the Court declined to hear this argument on common law procedural grounds. In prisoner habeas cases, the miscarriage of justice exception is often tied to claims of actual innocence because "the quintessential miscarriage of justice is the execution of a person who is entirely innocent." *Schlup v. Delo*, 513 U.S. 298, 321 (1995) *Id.* at 324-25. Immigration detention has no direct equivalent to actual innocence: indeed, it allows the confinement in prison-like conditions of individuals who have been charged with no crime. However, the detention of a man who had been given the right to be within this country shocks the conscience in a similar manner to the criminal conviction of an innocent man. *See Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP, 2025 WL 2770629 (S.D. Cal. Sept. 26, 2025) (explaining the due process protections of petitioners with prior parole). Such is the case with Petitioner here. Considering the timing of the earlier petition, issues with prior counsel, and the claim being raised for the first time here, the Court finds that it would be a quintessential miscarriage of justice to decline to hear the argument of someone who

should not have been redetained in the first place nearly nine months later on procedural grounds.

In conclusion, the Court finds that Petitioner has shown cause for raising his prior parole for the first time here, and has shown the miscarriage of justice exception to the abuse of the writ doctrine applies. The Court thus declines to deny the Petition for abuse of the writ, and reaches the merits of Petitioner's claim. *See Alaimalo v. United States*, 645 F.3d at 1049.

**B. Due Process**

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). It appears that here, Petitioner was granted humanitarian parole 8 U.S.C. § 1182(d)(5)(A). In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process where notice and opportunity to be heard were not given to a petitioner).

Further, courts have repeatedly held that liberty interests do not expire when parole does. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). Rejecting similar arguments from the government, the court held that "this private interest did not expire along with Petitioner's parole agreement. Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process." *Id.*; *see also Rodriguez Cabrera v. Mattos*, 808 F. Supp. 3d 1159, 1179 (D. Nev. 2025) ("Petitioner has a fundamental interest in freedom from physical confinement, and that liberty interest is particularly strong given his initial release from detention in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since."); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) ("[P]etitioner's liberty interest did not expire along with his parole.").

Here, Petitioner was granted parole after he entered and was processed in this country, creating a liberty interest protected by the Due Process clause. Pet. ¶ 36. The liberty interest underlying that parole has not expired through any of the stages of his immigration case, including the automatic, time-based end of his parole. *See Ramirez Tesara*, 800 F. Supp. 3d at 1136. These liberty interests are particularly "weighty" where Petitioner relies on the government's grant of release to take actions to build a life in this country—as Petitioner has done here. *Ramirez Tesara*, 800 F. Supp. 3d at 1136; *Rodriguez Cabrera*, 808 F. Supp. 3d at 1179 ("His interest in being free from confinement is particularly weighty, given his family and community ties within this country.").

As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard, but also that the notice and opportunity be meaningful. 2025 WL 2770629, at *3. Petitioner alleges that he was arrested and re-detained without notice or opportunity to be heard regarding the loss of his liberty interest. Pet. ¶ 44. Accordingly,

the Court finds that Respondents violated Petitioner's due process rights when they re-detained him on November 1, 2025.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of his preexisting parole that existed at the time he was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **August 24, 2026**, confirming that Petitioner has been released. The Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: August 21, 2026

Honorable James E. Simmons Jr.
United States District Judge